Hon. Robert Lasnik
December 16, 2009 at 1:30 p.m.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>   v.<br><br>CLAY ROUECHE,<br><br>             Defendant. | NO. CR07-344RSL<br><br>DEFENDANT'S SENTENCING MEMORANDUM |

## I. INTRODUCTION

On April 28, 2009, defendant Clay Roueche entered a guilty plea to Counts 1, 3 and 5 of the Government's Superseding Indictment. Sentencing is currently scheduled for December 16, 2009, at 1:30 p.m. As discussed elsewhere, the defense anticipates that the Court may be called upon to resolve certain legal issues and factual disputes relating to the upcoming sentencing proceeding. *See* Defendant Roueche's Memorandum Regarding Factual Disputes.

DEFENDANT'S SENTENCING MEMORANDUM - 1
CR07-344RSL

Allen, Hansen & Maybrown, P.S.
600 University Street, Suite 3020
Seattle, Washington 98101
(206) 447-9681

## II. FACTS

### A. Background and History

Clay Roueche is thirty-four years of age. Born and raised in and around Abbotsford, British Columbia, Mr. Roueche has never lived in the United States. He attended schools in Abbotsford and Chilliwack. *See* PSR ¶ 136. After graduating from high school, Mr. Roueche attended the University of Fraser Valley for a short time. *See id.* ¶ 137. Over the years, Mr. Roueche has held several jobs in businesses in lower British Columbia. *See id.* ¶¶ 143-45. For several years, Mr. Roueche owned and operated a restaurant in Chilliwack. *See id.* ¶ 142.

Mr. Roueche first married at age 22. Unfortunately, that relationship ended in large part due to his former wife's significant mental health problems. *See* PSR ¶¶ 119, 123. Mr. Roueche has two beautiful young children, now ages 6 and 9, from that relationship. Also, he adopted his former wife's oldest daughter, who is now age 12, before the relationship ended.

Mr. Roueche has two loving parents. *See* PSR ¶¶ 110-14, 123-25. Mr. Roueche also has a loving girlfriend who has helped to care for his young children while he has been away in custody. As reflected in the attached letters, Mr. Roueche has the full support of friends and family. *See* Appendix A.

Mr. Roueche has not denied his involvement with the UN. However, in light of ongoing cases and investigations in Canada, he has declined to discuss any matters relating to the UN and his affiliation with that group. *See* PSR ¶ 122. Nonetheless, the presentence report contains a great deal of disputed information. Some of this information concerns the alleged "reputation" of members of the UN. *See* PSR ¶ 31. The report also includes speculation regarding Mr. Roueche's supposed involvement in other criminal activity (most of which is based upon unproven allegations).

*DEFENDANT'S SENTENCING MEMORANDUM* - 2
CR07-344RSL

Allen, Hansen & Maybrown, P.S.
600 University Street, Suite 3020
Seattle, Washington 98101
(206) 447-9681

It is important to note, however, that Mr. Roueche has never been convicted of any serious criminal offense. He does have one conviction for simple assault – based on a fist fight that occurred during 2007 – which resulted in a sentence of probation. *See* PSR ¶ 101. This would be the equivalent of a misdemeanor assault conviction in Washington and it does not count as "criminal history" under the United States Sentencing Guidelines.

B. **Offense Conduct**

This case arises from a collaborative investigation between law enforcement agencies in Canada and the United States. Mr. Roueche's offenses stemmed from a series of overlapping conspiracies relating to the flow of illegal drugs and currency between Canada and the United States. Initially, the Canadian conspirators would export marijuana from British Columbia, Canada to the United States. Conspirators in the United States would then amass funds resulting from the marijuana sales and transport that currency to California. These funds would be used to purchase cocaine from persons in California. Finally, cocaine would be transported from California to British Columbia. During the course of the investigation, the Government seized a significant quantity of drugs from alleged co-conspirators – many kilos of marijuana in Washington and many kilos of cocaine in California.

Mr. Roueche has pled guilty and taken responsibility for his unlawful conduct in this jurisdiction.[1] Mr. Roueche acknowledges his guilt and admits that he helped to supervise the transportation of marijuana and the money laundering offenses within the United States.

---

[1] Nevertheless, the PSR also discusses several unrelated persons and events. *See, e.g.,* PSR ¶¶ 15, 17, 19-21, 25, 49-52, 64-65, and 67. Along these lines, the report includes a discussion of drugs and currency which do not involve Mr. Roueche. *See, e.g.,* PSR ¶¶ 49-52, 64-65, and 67. For these reasons, Mr. Roueche objects to the inclusion of these paragraphs in this report.

*DEFENDANT'S SENTENCING MEMORANDUM* - 3
CR07-344RSL

Allen, Hansen & Maybrown, P.S.
600 University Street, Suite 3020
Seattle, Washington 98101
(206) 447-9681

Mr. Roueche also acknowledges that he was involved, albeit to a lesser extent, with the transportation of cocaine. However, most all of this activity was completed under the supervision of persons other than Mr. Roueche. Yet, relying upon the statement of a single witness (Daniel LeClerc), the Government has presented a skewed picture of Mr. Roueche's role in this aspect of the enterprise. As discussed elsewhere, the defense denies all of LeClerc's claims. *See* Defendant Roueche's Memorandum Regarding Factual Disputes. In point of fact, Mr. Roueche did not direct the activities of LeClerc and he was not the supervisor of the cocaine trafficking operation. Although the defense should not be forced to prove a negative, recent defense interviews support the defense position on this score. *See id.* Daniel LeClerc is an informant who seems willing to say most anything, at any time, in the hopes of receiving an additional "time cut" from the Government and the Court. LeClerc has recently attempted to heap allegations upon Mr. Roueche when, in reality, he is only hoping to curry favor with the Government (and to support a motion for release under Rule 35). The Court should disregard all of this witness' contentions.

C. **Arrest and Detention**

On May 17, 2008, Mr. Roueche was arrested in Dallas, Texas following his unsuccessful attempt to travel to Mexico to attend a wedding. This arrest was accomplished when, at the request of agents from the United States and Canada, Mr. Roueche was denied entry into Mexico and subsequently forced to leave Mexico on an airplane travelling to Texas.

Mr. Roueche has been detained since that time. For most of this time he has been held in isolation in the Federal Detention Center ("FDC") at SeaTac Washington. Suffice it to say, Mr. Roueche has endured very harsh punishment – perhaps the most restrictive conditions

*DEFENDANT'S SENTENCING MEMORANDUM* - 4
*CR07-344RSL*

Allen, Hansen & Maybrown, P.S.
600 University Street, Suite 3020
Seattle, Washington 98101
(206) 447-9681

possible – while he has been held at the FDC. He has had limited visits with family members. And, he has only been permitted to see his children once since May 2008.

This summer, Mr. Roueche was transferred to the Federal Corrections Institution at Marion, Illinois for several months. Mr. Roueche did very well at the FCI. For the first time, he was permitted to communicate with family members via e-mail. Also, Mr. Roueche took it upon himself to complete study programs in Spanish and Marketing. The time away from FDC (and at Marion), has helped to change Mr. Roueche's attitude towards his current situation and circumstances.

### D.   Procedural Background

Mr. Roueche was first indicted in October 2007. Later, during July 2008, the Grand Jury returned a Superseding Indictment charging Mr. Roueche and others with narcotic trafficking related offenses including: conspiracy to export cocaine (Count 1); conspiracy to distribute cocaine (Count 2); conspiracy to import marijuana (Count 3); use and carrying a firearm in relation to a crime of drug trafficking (Count 4); conspiracy to engage in money laundering (Count 5). *See* Dkt. # 49.

Almost from the outset, Mr. Roueche notified the Government that he was hoping to settle all matters relating to the case. The parties met with Hon. Ricardo Martinez for a settlement conference during April 2009. The conference was not successful – insofar as the parties were unable to reach agreement as to any of the key factual and legal issues surrounding this case. Nevertheless, Mr. Roueche agreed to enter an "open ended" plea of guilty to Counts 1, 3 and 5, and the Government agreed to dismiss all remaining counts in the Superseding Indictment. At the time of his plea hearing, the Government acknowledged that Mr. Roueche had fully accepted responsibility for his conduct in regards to these matters.

*DEFENDANT'S SENTENCING MEMORANDUM* - 5
*CR07-344RSL*

Allen, Hansen & Maybrown, P.S.
600 University Street, Suite 3020
Seattle, Washington 98101
(206) 447-9681

Mr. Roueche now comes before this Court for sentencing on these charges.

### III. *UNITED STATE V. BOOKER* AND THE PROPER SENTENCING PARADIGM

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that *Blakely v. Washington*, 542 U.S. 296 (2004), applied to the federal sentencing guidelines, and that the Sixth Amendment's jury trial guarantee prevented judges from finding facts that exposed a defendant to increased prison time. As a remedy, the Court excised the provision of the Sentencing Reform Act that made the guidelines mandatory, 18 U.S.C. § 3553(b). The remedial majority held that district courts must still consider the guideline range, 18 U.S.C. § 3553(a)(4) & (5), but must also consider the other directives set forth in § 3553(a). Thus, under *Booker*, courts must treat the guidelines as just one of a number of sentencing factors.

18 U.S.C. § 3553(a) requires courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." *Id.* In fact, Section 3553(a)(2) states that such purposes are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner.

*Id.*

The Guidelines calculations are to be treated as "advisory guidelines," post *Booker*. *See, e.g., United States v. Beng-Salazar*, 452 F.3d 1088, 1090 (9th Cir. 2006). The directives of *Booker* and § 3553(a) make clear that courts may no longer uncritically apply the

*DEFENDANT'S SENTENCING MEMORANDUM - 6*
*CR07-344RSL*

Allen, Hansen & Maybrown, P.S.
600 University Street, Suite 3020
Seattle, Washington 98101
(206) 447-9681

guidelines, but instead must view them as advisory only. *See Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007).

In *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (*en banc*), the Ninth Circuit made clear that "the district court may not presume that the Guideline range is reasonable." *Id*.

> Nor should the Guideline factor be given more or less weight than any other. While the Guidelines are to be respectfully considered, they are one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence.

*Id*. Rather, the court "must make an individualized determination based upon the facts." *Id*.

Accordingly, given *Booker* and its progeny, this Court must take into account all relevant sentencing factors when crafting an appropriate sentence. *See, e.g., United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005). Moreover, the Court is free to structure a sentence – including a split sentence – as it deems most appropriate under the circumstances.

## IV. **DUE PROCESS CONCERNS**

Even before *Booker*, several courts have recognized that due process principles apply during sentencing proceedings. *See United States v. Burns*, 501 U.S. 129, 138-39 (2001). *See also* U.S.S.G. § 6A1.3(a). The preponderance of evidence standard is generally the appropriate standard for factual findings used for sentencing. *See United States v. Dare*, 425 F.3d 634, 642 (9th Cir. 2005); *United States v. Restrepo*, 946 F.2d 654, 661 (9th Cir. 1991) (en banc) ("[A]s a general rule . . . , due process does not require a higher standard of proof than preponderance of the evidence to protect a convicted defendant's liberty interest in the accurate application of the Guidelines."). However, when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction, the

*DEFENDANT'S SENTENCING MEMORANDUM* - 7
CR07-344RSL

Allen, Hansen & Maybrown, P.S.
600 University Street, Suite 3020
Seattle, Washington 98101
(206) 447-9681

government may have to prove the factor by clear and convincing evidence. *See United States v. Felix*, 561 F.3d 1036, 1045-46 (9th Cir. 2009). In *United States v. Jordan*, 256 F.3d 922, 928 (9th Cir. 2001), the Circuit court noted that in determining whether a sentence has a disproportionate impact, the sentencing court must look at the "totality of the circumstances," including the factors pronounced in *United States v. Valensia*, 222 F.3d 1173, 1182 (9th Cir. 2000), *cert. granted, judgment vacated, and remanded by* 532 U.S. 901 (2001) (internal quotation marks omitted). Here, in light of the potential impact of the sentencing factors in this case, the defense maintains that this Court must use the "clear and convincing evidence" standard. The Ninth Circuit has also explained that a sentencing court should not consider hearsay evidence that is not "corroborated by extrinsic evidence." *United States v. Ponce*, 51 F.3d 820, 828 (9th Cir. 1995). *See also United States v. Corral*, 172 F.3d 714, 715 (9th Cir. 1999); *United States v. Kerr*, 876 F.2d 1440, 1446 (9th Cir. 1989).

The core procedural goals of sentencing should be fairness and accuracy. When years of confinement ride on the court's factual findings, a high degree of confidence should be attached to these findings. *See generally United States v. Dazey*, 403 F.3d 1147 (10th Cir. 2005). Thus, in appropriate circumstances, this Court should adopt more rigorous sentencing procedures to ensure a fair and reliable proceeding.

Although this case does not include any contention that the defendants committed any violent offense within the United States, the Government has alleged that members of the UN Gang have sometimes engaged in violent activities in Canada. Along these same lines, the Pre-Sentence Report includes a claim that unnamed members of the UN "have become known for their reputation of extreme violence." PSR ¶ 30. To date, the Government has presented no evidence – and certainly no reliable evidence – that would suggest that Mr. Roueche was

*DEFENDANT'S SENTENCING MEMORANDUM* - 8
*CR07-344RSL*

Allen, Hansen & Maybrown, P.S.
600 University Street, Suite 3020
Seattle, Washington 98101
(206) 447-9681

involved in any of these activities. Moreover, much of this alleged activity occurred *after* Mr. Roueche was arrested and held to face charges in this district. Mr. Roueche denies that he has threatened or harmed any other person and it would be inappropriate to sentence him based upon some speculative claim regarding his reputation in Canada.

The defense believes that the Court should disregard this type of information when deciding upon the ultimate sentence in this case. For, if any of these allegations are true, Mr. Roueche will be punished by the Canadian courts. In fact, the Canadian authorities have previously informed this Court that they are intending to bring criminal charges against Mr. Roueche in the future. Under these circumstances, the Court should not rely upon these same allegations to "enhance" Mr. Roueche's punishment in this case.

Mr. Roueche recognizes that the double jeopardy clause would not apply in this type of situation. *See, e.g., Witte* v. *United States*, 515 U.S. 389 (1995). Yet, general principles of fairness and proportionality suggest that the Court should avoid a situation where the defendant is punished twice for the same conduct. For example, in the case of Noe Camacho, this Court concluded that the defendant's sentence in this case should run concurrently with a sentence that was imposed by the State of California.

### V. ADVISORY SENTENCING GUIDELINES

Under U.S.S.G. § 2D1.1, the base offense level is 38. Mr. Roueche also acknowledges that certain adjustments do apply in this case. *See* PSR ¶¶ 88, 92, 95.

The defense does object to a two-level increase regarding the firearm. *See* PSR ¶ 87. First, the Government has agreed to dismiss the allegation in Count 4 based upon a lack of evidence. Second, there is no evidence that Mr. Roueche possessed a firearm during the course of his conduct in these offenses. Third, he should not be held responsible for the

*DEFENDANT'S SENTENCING MEMORANDUM* - 9
*CR07-344RSL*

Allen, Hansen & Maybrown, P.S.
600 University Street, Suite 3020
Seattle, Washington 98101
(206) 447-9681

conduct of his co-conspirators as there is no evidence that he knew they were in possession of a firearm.  *See, e.g., United States v. Font-Ramirez*, 944 F.2d 42 (1st Cir. 1991); *United States v. Apple*, 915 F.2d 899 (4th Cir. 1993); *United States v. Mergerson,* 4 F.3d 337 (5th Cir. 1993); *United States v. Delgado-Paz*, 506 F.32d 652 (8th Cir. 2007); *United States v. Lopez*, 384 F.3d 937 (8th Cir. 2004); *United States v. Robinson*, 978 F.2d 1554 (10th Cir. 1992); *United States v. Garcia*, 909 F.2d 1346 (9th Cir. 1990).  Fourth, and finally, defendant should not receive an enhancement for alleged conduct that may have occurred outside the jurisdiction of this Court.

The defense also objects to a two-level increase under U.S.S.G. § 2S1.1(b).  *See* PSR ¶ 89.  The money laundering charge, Count 5, carries a maximum sentence of 20 years in custody.  Thus, the guideline calculations – and the suggested range – must be adjusted accordingly.  *See generally* U.S.S.G. §§ 5G1.1(a) (b) and 5G1.2.  For this reason, the sentencing calculations must be modified – and the Court should not utilize the enhancement in U.S.S.G. § 2S1.1(b) when calculating the Adjusted Offense Level as to the grouped counts.

With a Total Offense Level of 41 and with a Criminal History Category of I, Mr. Roueche faces an advisory guideline range of 324-405 months in custody on Counts 1 and 3; he faces an advisory guideline range of 20 years on Count 5.

## VI. **SENTENCING PROPORTIONALITY**

Prior to the Supreme Court decision in *Booker*, it had already been held that a downward departure from the guideline was appropriate where the imposition of a standard range sentence would create a huge unjustified disparity: "Downward departure to equalize sentencing disparity is a proper ground for departure under the appropriate circumstances." *United States v. Daas*, 198 F.3d 1167, 1168 (9th Cir. 1999), *cert. denied*, 531 U.S. 999 (2000).

> The purpose of the Sentencing Commission was to establish Guidelines that "avoid[] unwarranted sentencing disparities among defendants with

*DEFENDANT'S SENTENCING MEMORANDUM* - 10
CR07-344RSL

Allen, Hansen & Maybrown, P.S.
600 University Street, Suite 3020
Seattle, Washington 98101
(206) 447-9681

similar [criminal] records who have been *found guilty* of similar criminal conduct." 28 U.S.C. § 991(b)(1)(B). In drafting the Guidelines, the Commission "sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders." U.S.S.G. Ch. 1, Pt. A, Intro. ¶ 3, at 2.

*United States v. Banuelos-Rodriguez*, 215 F.3d 969 (9th Cir. 2000). *Accord United States v. Caperna*, 251 F.3d 827 (9th Cir. 2001). As discussed below, the Court should impose a sentence which is (a) proportional to the sentences imposed upon the other significant co-conspirators in this case and (b) consistent with, but no greater than, the sentences imposed in other major drug cases that have been litigated in this District.

### A. Sentences Imposed Upon Co-Defendants in this Same Case

More than eight defendants have already been sentenced for their involvement in the same criminal enterprise as Mr. Roueche. This Court has sentenced two defendants who were key participants in the most serious aspects of the conspiracy. On September 18, 2009, the Court sentenced Noe Camacho to a term of 120 months in custody to be served concurrently with the term of imprisonment imposed in a California case. *See* Dkt. # 324; PSR ¶ 14. On September 11, 2009, this Court sentenced Khan Ann Truong to a sentence of 108 months in custody. *See* Dtk. # 319; PSR ¶ 8. This Court also sentenced several less-involved defendants to prison terms ranging from 60 days electronic home monitoring to 24 months in custody. *See* PSR ¶¶ 6-14.

Clearly, the Government entered into a variety of plea agreements with other defendants that significantly affected the potential sentences – and mandatory minimum sentences – each defendant faced. Indeed, every sentence thus far has been 120 months or less, despite evidence that some of the significant co-defendants had their own distribution networks and supply sources. While Mr. Roueche may be somewhat more culpable than the

*DEFENDANT'S SENTENCING MEMORANDUM - 11*
*CR07-344RSL*

Allen, Hansen & Maybrown, P.S.
600 University Street, Suite 3020
Seattle, Washington 98101
(206) 447-9681

other significant co-defendants in this case, the sentences given to the other defendants who engaged in similar activities simply pale in comparison to the sentence that has now been recommended by the Government and the probation office.

B. **Sentences Imposed in Comparable Major Drug Cases**

The defense has reviewed numerous "major" drug cases from the Western District of Washington in an effort to identify all comparable defendants and cases. In undertaking this review, the defense has generally focused on cases that involved drug quantities that resulted in the maximum offense level under U.S.S.G. 2D1.1 (level 38). The defense has disregarded any case – no matter how large – in which the defendant entered into a cooperation agreement with the Government. In fact, as discussed below, some of these comparable defendants have aggravating circumstances (e.g., obstruction, use of a minor, extensive criminal history) that are not present in this case. The defense has prepared a chart which outlines the salient facts in each of these comparable cases. *See* Appendix B. A further description of each case follows.

In *United States v. Alan Lai*, No. CR09-088JLR, the defendant pled guilty to conspiracy to export cocaine and conspiracy to import marijuana. There, Lai was the leader in a conspiracy that engaged in the transportation of many hundreds of pounds of cocaine from the United States to Canada and even larger quantities of marijuana from Canada to the United States. It was also alleged that Lai had smuggled guns from the United States to Canada. Although the defendant had no countable criminal history, he had previously committed acts of extortion in Canada. One week before trial, Lai entered a plea of guilty to two counts in the Indictment. Thereafter, Judge Robart sentenced Lai to a term of 12 years in custody.

*DEFENDANT'S SENTENCING MEMORANDUM - 12*
*CR07-344RSL*

Allen, Hansen & Maybrown, P.S.
600 University Street, Suite 3020
Seattle, Washington 98101
(206) 447-9681

In *United States v. Kyle Gianis*, No. CR04-334RSM, the defendant was convicted after trial of conspiracy to possess ephedrine with intent to distribute. Gianis was the lead defendant in a conspiracy that engaged in the transportation of massive quantities of ephedrine, a precursor chemical used in making methamphetamine, into the United States from Canada. Although Gianis was a young man, he had amassed several prior criminal convictions, including a juvenile drug conviction and an adult weapons conviction. After two co-conspirators were arrested with two large barrels (25 kilograms) of ephedrine at the Canada/United States border crossing, Gianis made repeated efforts to obtain reports and other paperwork relating to the investigation presumably in an attempt to obstruct justice. Similar to this case, the defendant was arrested in the United States after attempting to travel to Mexico. Gianis never accepted responsibility for any of his conduct and he was convicted at trial. Thereafter, Judge Martinez sentenced Gianis to a term of 13 years in custody.

This Court should also consider the case of *United States v. Mendoza*, No. 06-466 TSZ. There, the defendant pled guilty to conspiracy to import more than 1,000 kilograms of marijuana. Before embarking upon this new conspiracy, Mendoza had earned two prior federal drug convictions. As the Government stated:

> He is a man of talent, intelligence and great charm. Unfortunately, he has spent the last 20 years of his life committing crimes, smuggling drugs, and moving money through semi-phony businesses. Most disturbing, he has regularly used his aging parent to move money for him.

*Mendoza* Dkt. # 51 at 8. Also, according to the Government, the defendant absconded to Spain – as he had done in one of his previous federal cases – before any indictment was returned. After the defendant returned from Spain, the parties reached an agreement for sentencing – although they did not reach any agreement upon the Guideline calculations.

*DEFENDANT'S SENTENCING MEMORANDUM - 13*
*CR07-344RSL*

Allen, Hansen & Maybrown, P.S.
600 University Street, Suite 3020
Seattle, Washington 98101
(206) 447-9681

Rather, consistent with Rule 11(c)(1)(C), the parties agreed upon a sentence of 14 years in custody. Judge Zilly accepted the agreement and imposed that same sentence.

In *United States v. Darryl Shears*, No. CR08-307JCC, the defendant was charged with conspiracy to distribute cocaine and related offenses. The charges stemmed from a broad-based investigation that culminated in a wiretap in which Shears was overheard negotiating for the purchase of multi-kilogram quantities of cocaine from a supplier in Seattle. Ultimately, Shears was arrested as he attempted to consummate a purchase of fifteen kilos of cocaine from the supplier. After charges were filed, the Government's investigators determined that Shears had also been intercepted on a separate and unrelated wiretap from another major investigation in this District. *See United States v. Kilcup*, No. CR08-082RSL. Because Shears had *five* prior felony drug convictions, the Government initially filed notice that Shears would face a mandatory life sentence under 21 USC § 859.

The *Shears* case was aggravated in several respects. First, in an effort to avoid detection, Shears provided a bag filled with fifteen kilos of cocaine to a 14-year-old boy who happened to be present when the police arrived at the scene. Apparently, Shears hoped that the young boy would be able to escape with this bag. Second, as Shears' trial approached, he delivered a series of letters to his ex-girlfriend (who Shears knew to be a Government witness and who was also the mother of the young boy who was caught with Shears' cocaine who Shears also knew to be a witness) in an effort to bully her and to convince her to provide false testimony during his trial. Even so, the Government agreed to drop the life enhancement once Shears agreed to enter a plea of guilty to the charged offense. Judge Coughenour subsequently sentenced Shears to a term of 15-2/3 years in custody.

*DEFENDANT'S SENTENCING MEMORANDUM* - 14
CR07-344RSL

Allen, Hansen & Maybrown, P.S.
600 University Street, Suite 3020
Seattle, Washington 98101
(206) 447-9681

In *United States v. Robert Kesling*, No. CR05-173RSM, the defendant pled guilty to a conspiracy to distribute cocaine and marijuana. According to the pleadings in the case, Kesling had been involved in drug smuggling over the course of many, many years. He was finally indicted after a co-defendant was arrested as he tried to export a total of 149 kilograms of cocaine from the United States to Canada. It appears that the *Kesling* case involved drug quantities that were larger than the quantities involved in this case. Judge Martinez ultimately sentenced Kesling to a term of 17 years in custody.[2]

This Court presided over the case of *United States v. Robert Shannon*, CR08-177RSL.[3] The principal defendant in that case, Robert Shannon, was an associate of the Hells Angels in Canada. The Government claimed that Shannon was the leader of a Canadian drug organization, that the organization had trafficked in large quantities of cocaine and marijuana, and that the organization had engaged in acts of violence. There, the Government described that defendant's conduct as follows:

> An international drug smuggling ring based in the lower mainlands of British Columbia, Canada, were subject to an almost four-year criminal investigation by federal and local law enforcement officers. The investigation has been one of the largest and most successful in the history of prosecutions in the Western District of Washington. Thus far, the investigation has led to the seizure of approximately 1,300 pounds of cocaine and 7,100 pounds of high potency marijuana from Canada, colloquially referred to as "BC Bud." Agents have also seized $3,517,230 in United States Currency. The conspiracy distributed tens of thousands of pounds of marijuana into the United States and exported thousands of pounds of cocaine into Canada.

\* \* \*

---

[2] The case was remanded for re-sentencing following an appeal. But the Court imposed the same sentence – 17 years in custody – after remand.

[3] Defense counsel is quite familiar with the facts surrounding the *Shannon* case as he was the attorney for one of Mr. Shannon's co-defendants, Philip Stone.

DEFENDANT'S SENTENCING MEMORANDUM - 15
CR07-344RSL

Allen, Hansen & Maybrown, P.S.
600 University Street, Suite 3020
Seattle, Washington 98101
(206) 447-9681

> Defendant was the principal leader of the conspiracy. He worked closely with co-defendant Devron Quast and case-related defendant Farren Dean Docter. Defendant recruited Mr. Docter while the two were attending a custom truck show in British Columbia, Canada. Defendants and Mr. Quast joined together after a series of discussions in which Defendant told Mr. Quast about the high profit to be made in drug trafficking. Specifically, during one conversation, Defendant bragged to Mr. Quast that he had made $6,000,000 to $7,000,000 smuggling marijuana into the United States by hiding it inside loads of commercial beauty bark. Mr. Quast willingly joined Defendant fully expecting to gain great wealth.

*Shannon* Dkt. # 247 at 3. The Government also alleged that Shannon engaged in obstructionist (and threatening) conduct after he was arrested and held at the FDC.

Before trial, Shannon entered an "open ended" plea of guilty to the charges in the Indictment. Based upon his plea of guilty, the Government believed that Shannon faced a presumptive guideline range of LIFE in custody. The Government ultimately recommended a sentence of 405 months; the probation office recommended a sentence of 288 months; and the defense recommended a sentence of 168 months in custody. After considering all of the available evidence, and comparing Shannon's drug activities with other more serious offenses, this Court imposed a sentence of 20 years in custody.

**C. Conclusion**

This case is a very serious case, regardless of the Guideline calculations. And there is no question that Mr. Roueche had his hand in the smuggling of significant quantities of illegal drugs and currency. However, by all accounts, Mr. Roueche's case involved smaller drug quantities than in the *Kesling* case and significantly smaller quantities than in the *Shannon* case. Moreover, this case does not include some of the aggravating factors – *e.g.,* involvement of a minor, obstructionist activity, lack of acceptance of responsibility – that are found in the *Shears*, *Gianis*, and *Shannon* cases. Finally, Mr. Roueche does not have the extensive criminal record that is seen in either the *Shears* and *Mendoza* cases.

*DEFENDANT'S SENTENCING MEMORANDUM* - 16
CR07-344RSL

Allen, Hansen & Maybrown, P.S.
600 University Street, Suite 3020
Seattle, Washington 98101
(206) 447-9681

For all of these reasons, a sentence within the United States Sentencing Guidelines would be disproportionate and far more than necessary to meet the purposes of sentencing in this case. The defense submits that this Court should impose a sentence in a range of 15 to 20 years - which is greater than, but proportionate to, the sentences given to Mr. Camacho and Mr. Truong. Simply put, there is no reason for the Court to impose a sentence that is more than two or three times as long as the sentences imposed to co-conspirators Camacho and Troung. Nor is there any just reason to impose a sentence that is longer than these sentences imposed in the *Kesling* and *Shannon* cases.[4]

## VII. SENTENCING FACTORS

Clay Roueche has accepted full responsibility for his criminal conduct. As explained in his letter to this Court:

> Although I am a young man, I have made many foolish decisions and choices during my life. I have involved myself in illegal drug activities and I have helped to transport a great deal of drugs and money in and around the United States. My actions were very selfish.
>
> Before my arrest for these offenses, I have never spent any significant period away from my family. I feel that these last 20 months have changed my life. I have learned a great deal. Most importantly, I have begun to understand what is important in life. I look forward to the day when I can again see my family. I owe them all a great apology.
>
> Until recently, I did not even think about, let alone understand, the consequences of my actions. I am so very sorry for what I have done. I accept full responsibility for all of my conduct. I now understand that I have hurt myself, my family members, and others because of my foolish decisions. For all of this, I am sorry. Someday, I hope to make amends for my actions.

---

[4] It is noteworthy that the Government has recommended a sentence that is higher than might be imposed in a first degree murder case in the State of Washington. In fact, the proposed sentence is twice as long as the sentence this Court imposed on Joshua Binder who pled guilty for a RICO conspiracy to commit murder. *See United States v. Joshua Binder*, District Court Cause No. CR06-041 RSL. The proposed sentence is three times as long as the sentence this Court imposed on a defendant who pled guilty to several counts of aggravated sexual abuse. *See United States v. Joseph Jimicum*, Jr., District Court Cause No. CR07-303RSL.

*DEFENDANT'S SENTENCING MEMORANDUM* - 17
CR07-344RSL

Allen, Hansen & Maybrown, P.S.
600 University Street, Suite 3020
Seattle, Washington 98101
(206) 447-9681

Statement of Clay Roueche.

This is Mr. Roueche's first time in detention for any offense and he has certainly faced very harsh conditions. These last several months have had a profound effect on his life. It is hard to describe the anguish Mr. Roueche has suffered due to the loss of contact with his children.

Mr. Roueche has great potential – and a potential for change. Although he has received little formal education, he is an intelligent man. Once Mr. Roueche is moved from the FDC, he hopes to use his time in custody to read and to further educate himself. He gained a great deal from the studies he was able to complete during his time at Marion.

There is no reason that Mr. Roueche should be sentenced to a term in custody that approaches either 324 or 360 months, as suggested by the probation office and the Government, respectively. Such a sentence would be far more than is necessary for a man, like Mr. Roueche, who has never been previously convicted of any serious criminal offense. Mr. Roueche should be given an opportunity to change, and to rehabilitate himself, while serving a significant punishment for the offenses he has committed. The Court should allow for that opportunity in the future.

Mr. Roueche is approaching middle age. He has now begun to learn from the mistakes he has already made in his life. Mr. Roueche no longer wants to live in an armored car or as a man with a target on his back. He dreams of the day that he will be free from custody and back with his loving family and children.

## VIII. CONCLUSION

For all of these reasons, and in the interests of justice, this Court should impose a sentence that is proportionate to the sentences imposed upon the other offenders in this case.

*DEFENDANT'S SENTENCING MEMORANDUM - 18*
*CR07-344RSL*

Allen, Hansen & Maybrown, P.S.
600 University Street, Suite 3020
Seattle, Washington 98101
(206) 447-9681

Accordingly, the defense respectfully recommends that this Court should impose a sentence in the range of 15-20 years in custody. Such a sentence is sufficient, but no more than necessary, for Mr. Roueche.

DATED this 10th day of December, 2009.

TODD MAYBROWN, WSBA #18557
Attorney for Defendant Roueche

DEFENDANT'S SENTENCING MEMORANDUM - 19
CR07-344RSL

Allen, Hansen & Maybrown, P.S.
600 University Street, Suite 3020
Seattle, Washington 98101
(206) 447-9681

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record for the Government and the defendants.

/s/ Todd Maybrown
Todd Maybrown, Esq.
Allen, Hansen & Maybrown, P.S.
600 University St., #3020
Seattle, WA 98101
(206) 447-9681
todd@ahmlawyers.com

*DEFENDANT'S SENTENCING MEMORANDUM - 20*
*CR07-344RSL*

Allen, Hansen & Maybrown, P.S.
600 University Street, Suite 3020
Seattle, Washington 98101
(206) 447-9681